IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TAMI TAROCHIONE, | ) | **PLAINTIFF DEMANDS TRIAL BY JURY** |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Judge: |
| | ) | |
| COMMONWEALTH EDISON COMPANY, an Illinois corporation, EXELON CORPORATON, A Pennsylvania corporation, STONE & WEBSTER, INC., a Louisiana corporation, THE SHAW GROUP, INC., a Louisiana corporation,  NEWBERG-PERINI,INC., an Illinois Corporation, and PERINI CORPORATION, Massachusetts corporation, | ) ) ) ) ) ) ) ) | Magistrate Judge: |
| | ) | |
| Defendants. | ) | |

```
FILED: MAY 31, 2008
08cv3147 mjc
JUDGE KENNELLY
MAGISTRATE JUDGE DENLOW
```

## COMPLAINT AT LAW

NOW COMES the Plaintiff, TAMI TAROCHIONE, by and through her attorney, Philip W. Collins III, and complaining of Defendants, states as follows:

### NATURE OF CLAIM

1. This is an action seeking redress for discrimination in violation of Title VII, 42 U.S.C. §§2000e *et seq.*, of the Civil Rights Act of 1991 as amended.

### JURISDICTION and VENUE

2. Jurisdiction of this Court is proper under Title 28 U.S.C. §§1331 and 1343.

3. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 42 U.S.C. §2000e-5(f)(3).

**PARTIES**

4. Tami Tarochione ("Plaintiff") is a female citizen of the United States and was a resident of Ottawa, Illinois at all times relevant hereto.

5. Defendant, Commonwealth Edison Company ("ComEd"), at all times relevant hereto, was an Illinois corporation doing business in Illinois.

6. Defendant, Exelon Corporation ("Exelon") was a Pennsylvania corporation doing business in Illinois, and was the parent company of ComEd at all times relevant hereto.

7. Defendant, Stone & Webster, Inc. ("Stone & Webster") was a Louisiana corporation doing business in Illinois.

8. Defendant, The Shaw Group, Inc., ("The Shaw Group") was a Louisiana corporation doing business in Illinois and was the parent company of Stone & Webster.

9. Defendant, Newberg-Perini, Inc., ("Newberg-Perini"), was an Illinois corporation doing business in Illinois.

10. Defendant, Perini Corporation ("Perini"), was a Massachusetts corporation doing business in Illinois and was the parent company of Newberg-Perini at all times relevant hereto.

11. At all times relevant hereto, Plaintiff was an "employee," as defined under 42 U.S.C. 2000e (f),.

12. At all times relevant hereto, all named Defendants were "employers" as defined under 42 U.S.C. 2000e(b).

**PROCEDURAL REQUIREMENTS**

13.     Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII, 42 U.S.C 2000e *et seq.*, as amended by the Civil Rights Act of 1991.  Plaintiff timely filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC") and has received "Notice of Right to Sue," a copy of which is attached hereto and made part hereof as Exhibit A.

## FACTUAL BACKGROUND

14.     Plaintiff was employed as a laborer by Defendants at the La Salle and Braidwood Nuclear Power Stations at all times relevant hereto.

15.     On or about February 25, 2006, Plaintiff, while changing out of her work scrubs in the women's locker room, was confronted by an alleged "transgender" employee ("Wendall") that was dressed as a woman, who was staring at Plaintiff while she was in her underwear.

16.     Plaintiff told Wendall to leave immediately, but Wendall argued with Plaintiff that he was a woman and was told by management that he could use the women's locker room and that his name was "Karen."

17.     Plaintiff arranged a meeting with Dean Sac ("Sac"), the Project Site Manager, first thing the next morning, February 26, 2006, and told was told in a hostile manner that Wendall was a woman and that Plaintiff should talk to Pat O'Connor ("O'Connor"), another manager.

18.     Also on February 26, 2006, at the end of her shift, at approximately 7 p.m., Plaintiff was again confronted by Wendall in the ladies locker room while she was undressed, just smiling at her while staring at Plaintiff's breasts.

19.     Plaintiff then screamed at Wendall to get out of the locker room, to which Wendall replied, "I can be in here. I have permission from Dean Sac and Pat O'Connor to be in here."

20. Plaintiff quickly threw on her top and immediately left the locker room crying and feeling sick to her stomach, while Wendall stood and smiled.

21. Plaintiff had been told by co-workers that Wendall would wait until Plaintiff went into the locker room to change, and would then follow her into the locker room to watch her undress.

22. At a subsequent meeting with management, Plaintiff suggested that Wendall use a bathroom that was available and adequate for Wendall's needs, but was told by management that Wendall would continue to be allowed to use the women's locker room.

23. On or about February 28, 2006, Plaintiff again met with O'Connor and was told that Wendall had agreed to use another bathroom. It was at this meeting that O'Connor, referred to Wendall as Wendall, rather than as "Karen."

24. During that same meeting, O'Connor told Plaintiff that Wendall was a hermaphrodite, but Plaintiff responded that he was a transsexual, not a hermaphrodite, and that she felt this had all been a big joke, which prompted O'Connor to raise his hand and put his finger in Plaintiff's face and told her that if she didn't "let it go," she would no longer have a job, to which Plaintiff said that she was going to meet with Susan Landahl ("Landahl"), Site Vice President for Exelon.

25. Shortly after that encounter with O'Connor, Plaintiff was told by her union business agent that she could not file a grievance; that he would handle it.

26. Plaintiff was later told by another co-worker who had grown up with Wendall, that Wendall was in fact a male, and that he had been married, and that he and his wife had

adopted two children and were later divorced. Plaintiff then went to a bathroom to throw up because she was so upset.

27.     On or About March 9, 2006, several male employees made sexually offensive comments to Plaintiff when she arrived for work at 7 a.m., saying they would like to see her naked too, with some asking if Plaintiff's breasts were real or fake like Wendall's.

28.     At approximately 5:45 p.m., Plaintiff met with Landahl and informed her of all that had taken place and that she, Plaintiff, had informed both Sac and O'Connor of everything, to which Plaintiff was told that Landahl would speak to both Sac and O'Connor. The Plant Manager had been present also. Plaintiff also reported this to Dan Barnett ("Barnett"), also a member of Defendnat Exelon's management at the Exelon La Salle Nuclear Station.

29.     Two days later, Plaintiff was fired allegedly for insubordination.

30.     Plaintiff then went to meet with her Union Business Agent, Daivd Raikes ("Raikes"), saying that she wanted to file a grievance. Raikes told her that if she filed a grievance, she "would never work out there again."

31.     On or about April 11, 2006, Plaintiff was told by Local 393 to report to Defendants' Braidwood Nuclear Station to again work for Defendants.

32.     On or about April 13, 2006, Plaintiff received a telephone call from Local Union 393 and was told by Raikes that Defendants would not process her in order for her to begin work because they had heard a rumor that Plaintiff was going to sue Defendants. Raikes then said, "If this is true, you're going to be sorry."

33.     Raikes continued threatening Plaintiff, telling her that she "would be crazy to sue them;" "that [Defendants] have more money than God. They can get the best lawyers in the country."

Raikes also informed Plaintiff that Wendall would also be working now at the Braidwood facility, but on the midnight shift, as Plaintiff would be working days.

34. Plaintiff reported to work on April 14, 2006, for processing in order to be allowed entrance to the facility, but was denied access by Rosario Kahn ("Kahn"), Defendants' head of security, who demanded to see Plaintiff's divorce papers, documentation given to Defendants three years prior. Plaintiff then arranged for her divorce papers to be faxed to Kahn and to Robert Speek ("Speek"), Defendants' "Corporate Employee Concerns Investigator."

35. At approximately 3 p.m., Plaintiff was called by Kahn who said she had been cleared to enter the plant. But when Plaintiff attempted to enter the plant, she was told by security that because she was the last one processed, she would have to work the night shift, which meant that she was now being assigned the same shift at a different facility again having to work with Wendall.

36. On or about April 17, 2006, Plaintiff reported for work on the night shift. Later on during her shift, when Plaintiff entered the lunch room to eat, she saw Wendall, who's name badge now said "Karen Drummond." He smiled and winked at Plaintiff who ignored him and went to sit down to eat. Wendall, now "Karen," went and sat directly across from Plaintiff and repeatedly made suggestive flirtatious remarks to Plaintiff, forcing Plaintiff to leave.

37. For the next six days, Plaintiff would become sick and throw up both before and after work because of the ongoing remarks from Wendall and co-workers about what had happened at the La Salle facility.

38. Plaintiff was laid off after only a weeks' work.

## COUNT I

### SEXUAL DISCRIMINATION IN VIOLATION OF TITLE VII

39.     Plaintiff repeats and reasserts the allegations in paragraphs 1 through 38 as though fully pleaded and set forth herein.

40.     Plaintiff has a federally protected right to equal treatment in the workplace.

41.     Because of Plaintiff's gender, she was discriminated against in violation of Title VII by Defendants based upon, but not limited to, the facts set forth in all preceding paragraphs.

42.     Similarly situated male employees were not subjected to the same kind of discriminatory behaviors, actions, words, etc. as was Plaintiff, a female.

43.     Defendants' wrongful acts, individually and/or by and through their agents, were deliberate, intentional, willful, wanton, and malicious and in total disregard of, and reckless indifference to Plaintiff's rights under Title VII.

44.     As a direct and proximate result of the acts engaged in by Defendants, Plaintiff suffered severe financial damages, including but not limited to loss of pay, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment; sever emotional distress, humiliation, embarrassment; physical harm, exacerbation of medical conditions resulting in additional medical expenses; damage to her reputation, attorney's fees, costs, and other damages allowed under Title VII.

## COUNT II

### SEXUAL HARASSMENT UNDER TITLE VII

45.     Plaintiff repeats and reasserts the allegations in paragraphs 1 through 44 as though fully pleaded and set forth herein.

46. By the foregoing actions of Defendants, Plaintiff was sexually harassed in violation of Title VII, in that Defendants created a hostile and offensive work environment which unreasonably interfered with Plaintiff's work performance, and seriously affected her physical, financial, and psychological well-being.

## COUNT III

## RETALIATION UNDER TITLE VII

47. Plaintiff repeats and reasserts the allegations in paragraphs 1 through 46 as though fully pleaded and set forth herein.

48. In retaliation for Plaintiff complaining to Defendants of those facts set forth above, but not limited to same, Plaintiff was fired by Defendants allegedly for insubordination from the La Salle Nuclear Station, was deliberately forced to work the midnight shift with Wendall at the Braidwood facility, and was then laid off after only a week's work.

49. Defendants, individually and through their agents, willfully and wantonly violated Plaintiff's federally protected rights against retaliation under Title VII with reckless disregard for same.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants in an amount that will fully and justly compensate her for her injuries and damages of the past and future, including but not limited to loss of pay, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment; sever emotional distress, humiliation, embarrassment; physical harm, exacerbation of medical conditions resulting in additional medical expenses; damage to her reputation, attorney's fees, costs, and other

damages allowed under Title VII. As these acts of Defendants were willful and wanton, and were committed with reckless indifference to the federally protected rights of Plaintiff, punitive and/or exemplary damages are also due Plaintiff, as well as any further relief deemed appropriate by the Court.

**PLAINTIFF DEMANDS TRIAL BY JURY**

      Respectfully submitted,

      s/Philip W. Collins III

      Attorney for Plaintiff

Philip W. Collins III
Attorney and Counselor at Law
940 E. Diehl Road, Suite 110-B
Naperville, Illinois 60563
(630) 505-1424
Atty. No. 620419