IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAMI TAROCHIONE, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No.:  08 CV 3147** |
| v. ) | |
| ) | **Judge Kennelly** |
| COMMONWEALTH EDISONCOMPANY, ) | |
| an Illinois corporation, EXELON ) | **Magistrate Judge Denlow** |
| CORPORATION, a Pennsylvania ) | |
| corporation, STONE & WEBSTER, INC., a ) | |
| Louisiana corporation, NEWBERG-PERINI, ) | |
| INC., and Illinois Corporation, and PERINI ) | |
| CORPORATION, a Massachusetts ) | |
| corporation, ) | |
| ) | |
| **Defendants.** ) | |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
EXELON CORPORATION'S AND COMMONWEALTH
EDISON COMPANY'S MOTION TO DISMISS COMPLAINT

## I.    INTRODUCTION

In her three count Complaint, Plaintiff Tami Tarochione alleges that Defendants Commonwealth Edison Company ("ComEd"), Exelon Corporation, Stone & Webster, Inc., The Shaw Group, Inc., Newberg-Perini, Inc., and Perini Corporation subjected her to sexual harassment and discriminated against her on the basis of her gender while she worked as a Laborer at Defendants' LaSalle Nuclear Power Station and Braidwood Nuclear Power Station in violation of Title VII of the Civil Rights Act of 1991, as amended, 42 U.S.C. §§ 2000e, *et. seq.* (Complaint ("Cplt."), ¶¶ 5-12, 14, 41, 46.) Tarochione further alleges that Defendants terminated her and then, following her rehire, forced her to work the same shift as her alleged harasser, and then laid her off a week after her rehire in retaliation for complaining to senior management. (*Id.* at ¶ 48.)

Tarochione's Complaint should be dismissed in its entirety as to ComEd and Exelon Corporation for the following reasons. *First*, Tarochione failed to exhaust her administrative remedies by filing a timely administrative charge in which she named

C125230

ComEd and Exelon Corporation as parties responsible for the alleged conduct. Although Tarochione did file an administrative charge, she never named ComEd or Exelon Corporation as a respondent and failed to provide either company with proper notice of her intention to hold them liable for the alleged conduct. *Second*, even if Tarochione had given ComEd and Exelon Corporation timely notice of her intentions, the Complaint must still be dismissed as to each entity because neither is a proper defendant in this action. Exelon Corporation is not an "employer" against which an action may be brought under Title VII. Rather, Exelon Corporation is a holding company that does employ any employees. Although ComEd is an "employer" under Title VII, it was not Tarochione's employer during the period covered by the allegations in the Complaint. *Third*, Tarochione did not file a timely charge of discrimination.  The essence of Tarochione's claims is that certain things happened to her more than 300 days before she filed her original charge.  *Fourth*, as a matter of law, the well-pled allegations fail to state a claim of either sex discrimination or sexual harassment.  *Fifth,* and finally, even if one ignores the fact that Tarochione's claims are not timely, Tarochione cannot make out a claim of retaliation because she never complained about a practice prohibited by Title VII.

## II. BACKGROUND FACTS

### A. Entities Identified In Charges of Discrimination

Prior to filing the instant action, Tarochione filed a Charge of Discrimination and an Amended Charge with the Equal Employment Opportunity Commission ("EEOC"), following which the EEOC issued a Notice of Right to Sue. (Cplt., ¶ 13; a copy of the initial Charge of Discrimination is attached hereto Exhibit A; the Amended Charge is attached as Exhibit B; and the Notice of Right to Sue is attached as Exhibit C.[1]) In her

---

[1] In Paragraph 13 of the Complaint, Tarochione alleges that she timely filed a charge with the EEOC and received a Notice of Right to Sue. Although she states that she attached a copy of the Notice of Right to Sue to the Complaint as Exhibit A, the Complaint contains no such attachment. Nor did she attach to the Complaint a copy of her Charge or Amended Charge. To the extent Tarochione specifically references her Charge of Discrimination (and, by implication her Amended Charge) and Notice of Right to Sue in the Complaint and the filing of an administrative charge and receipt of right to sue are conditions precedent to filing suit, this Court may consider the Charge, Amended Charge, and Notice of Right to Sue at the motion to dismiss stage, without converting the motion to one for summary judgment. "Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)

initial Charge, filed on January 25, 2007, Tarochione names the respondent, and identifies her "employer," as "Exelon Nuclear LaSalle Station." In the body of the Charge, Tarochione also refers to conduct that allegedly occurred at Exelon Nuclear LaSalle Station's "Braidwood" location. (Charge, Exh. A.) Tarochione identifies the same employer and respondent in her Amended Charge, filed on February 12, 2007. (Amended Charge, Exh. B.) Neither the original Charge nor the Amended Charge identifies ComEd or Exelon Corporation as a respondent or Tarochione's employer. (Original Charge, Exh. A; Amended Charge, Exh. B.) In fact, neither charge makes any mention of Exelon Corporation or ComEd. *Id.*

### B. Relationship between Exelon Corporation, ComEd, and Exelon Nuclear LaSalle Station and Braidwood Station

Defendant Exelon Corporation is a holding company for a group of subsidiaries. (U.S. Securities and Exchange Commission, Form 8-K, obtained from http://www.sec.gov, attached hereto as Exhibit D.[2]) Exelon Generation Company, LLC ("GenCo") and Defendant ComEd are second-tier subsidiaries under the Exelon Corporation umbrella. (*Id.*) GenCo owns and operates a number of nuclear power plants, including the LaSalle Nuclear Power Plant and Braidwood Nuclear Power Plant referenced in the Charge, Amended Charge, and Complaint. This Court can take judicial notice of the fact that the Nuclear Regulatory Commission official records list GenCo as the licensee and operator of the two power stations at issue. (U.S. Nuclear Regulatory Commission description of nuclear power plants operated by GenCo, available at www.nrc.gov, attached as Exh. E.) Although each of these plants may be referred to

---

(contract attached to motion to dismiss is part of pleadings because agreement was referenced in complaint and central to claims); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2nd Cir. 2002) (on Rule 12(b)(6) motion, court may consider documents incorporated by reference or relied on in the complaint).

[2] In ruling on a Rule 12(b)(6) motion, this Court may take judicial notice of documents and other information obtained from public sources, including the Internet, without converting the motion to dismiss to one for summary judgment. *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) ("We may take judicial notice of matters of public record, and we exercise that authority here to note that the Suburban Bank of Barrington is a branch office of Harris Bank"); *Henson v. CSC Credit Services*, 29 F.3d 280 (7th Cir. 1994) (in ruling on a Rule 12(b)(6) motion, the court may consider the allegations in the complaint as well as all matters of which judicial notice may be taken).

informally as an Exelon Station, the entities identified in the Charge and Amended Charge ("Exelon Nuclear LaSalle Station" and "Exelon Nuclear Braidwood Station") do not exist.

### C. Conduct Allegedly Occurring At Exelon Nuclear LaSalle Station From February 25, 2006 Through March 11, 2006

According to the Complaint, on or around February 25, 2006, a "transgender" co-worker entered the women's locker room and stared at Tarochione while she (Tarochione) was in her underwear.[3] (Cplt., ¶ 15). The Charge and Amended Charge, however, state merely that the transgender co-worker entered the locker room. (original Charge, Exh. A; Amended Charge, Exh. B.) In the Charges, there is no indication that the co-worker engaged in any other kind of behavior (Exh. A; Exh. B.) According to Tarochione, she complained about the transgender co-worker, following which on March 9, 2006, her male co-workers allegedly made sexually offensive comments to Tarochione regarding her encounter with the transgendered co-worker. (Cplt., ¶ 27; Exhs. A, B.) On March 9, 2006, Tarochione complained to senior management about the alleged conduct. (Cplt., ¶ 28; (in the Charge and Amended Charge, Tarochione alleges that she complained to senior management on March 15 or 15, after her termination.)) Two days later, on March 11, 2006, Tarochione learned of her termination for insubordination. (Cplt., ¶ 29; Exhs. A, B.)

### D. Conduct Allegedly Occurring At Exelon Nuclear Braidwood Station From April 11, 2006 Through April 24, 2006

Tarochione received a call on April 11, 2006 instructing her to report to the Braidwood Nuclear Station. (Cplt., ¶ 31; original Charge, Exh. A; Amended Charge, Exh. B.) Upon reporting on April 14, 2006, Tarochione alleges that she was informed that the "transgendered" employee who had been harassing her at LaSalle Station was now working at the Braidwood facility. (Cplt., ¶ 35; Exh. A; Exh. B.) The Complaint states that beginning April 17, 2006, the transgendered employee confronted Tarochione in the lunchroom and continued the harassment. (Cplt., ¶ 36). The Amended Charge has no

---

[3] For purposes of this Motion to Dismiss only, Exelon Corporation and ComEd take the facts plead in the Complaint as true.

such allegation. (Exh. B.)  On or around April 24, 2006, Defendants laid Tarochione off employment. (Cplt., ¶ 36.)

### E.  Tarochione's Amended Charge

On February 12, 2007, Tarochione filed an Amended Charge with the EEOC. (Exh. B.) Although the Amended Charge still named Exelon Nuclear LaSalle Station as the Respondent and challenges conduct that allegedly occurred during the same period (February 25, 2006 to April 24, 2006), Tarochione clarified that she had been employed at Exelon Nuclear LaSalle Station "through its contractor, Newberg-Perini Stone & Webster (Venture)." (Exh. B.) For the most part, the Amended Charge challenges the same conduct and contains the same allegations, except in two respects. First, as noted, the Amended Charge contains no reference to the alleged incident that occurred on April 17, 2006, when Tarochione's transgender co-workers allegedly confronted her in the lunchroom and continued the harassment. (Exh. A, B.) Second, the Amended Charge adds a new allegation that when Tarochione reported for processing at Braidwood Station on April 14, 2006, Exelon Nuclear LaSalle Station's Head of Security verbally abused her in front of her peers. (Exh. B.)

On April 29, 2008, the EEOC issued a Notice of Right To Sue. ( copy of the Notice of Right to Sue is attached as Exhibit C.) The EEOC sent a copy of the Notice to Respondent Exelon Nuclear LaSalle Station. (Exh. C.) Tarochione filed her Complaint on May 31, 2008.

### III. ARGUMENT

Prior to filing suit in federal court alleging violations of Title VII, an aggrieved party must exhaust her administrative remedies by first filing a charge of discrimination with the EEOC. 42 U.S.C., § 2000e-5(a), 5(e)(1). To be timely, the charge must be filed within 300 days of each alleged discrete discriminatory act (*id*. at § 2000e-5(e)(1)), and the charge must identify the aggrieved party's employer as the respondent. *Id*. at § 2000e-2(a), 3(a). Title VII contains "a charge filing provision that 'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit. <u>Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 39 L. Ed. 2d 147, 94 S. Ct. 1011 (1974)</u>. An individual must file a charge within the statutory time period and serve notice upon the person against whom

the charge is made. . . . A claim is time barred if it is not filed within these time limits." *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

## A. THE COMPLAINT SHOULD BE DISMISSED AS TO DEFENDANTS EXELON CORPORATION AND COMED

### 1. Tarochione failed to exhaust her administrative remedies

#### a. Failure to Name Defendants in a Charge of Discrimination

Although Tarochione filed an original and amended charge, both charges identify the respondent and her employer as "Exelon Nuclear LaSalle Station." (Exhs. A, B.) Neither Charge identifies Exelon Corporation or ComEd as a respondent, Tarochione's employer, or an entity that engaged in any wrongdoing with respect to Tarochione. Tarochione's failure to name Exelon Corporation or ComEd as a party to her EEOC Charges or to otherwise give Exelon Corporation or ComEd notice that she intended to hold them responsible for the alleged conduct at issue in this proceeding is fatal to her claims against Exelon Corporation and ComEd in this action. "Ordinarily, a party not named in an EEOC charge may not be sued under Title VII." *Schnellbaecher v. Baskin Clothing Company*, 887 F.2d 124, 126 (7th Cir. 1989). Accordingly, Tarochione's Complaint should be dismissed, in its entirety, as to Exelon Corporation and ComEd. *Id.* at 127.

The entity Tarochione does name in her charge – "Exelon Nuclear LaSalle Station" – is not a legal entity. In addition, the entity that Tarochione presumably meant to name in her charges – Exelon Generation Company, LLC ("GenCo") – is a separate and distinct entity from Exelon Corporation and ComEd. (Exh. D.) And, to the extent Tarochione seeks to hold Exelon Corporation liable as the parent company of GenCo, her claims against Exelon Corporation still fail because, as explained above, Tarochione did not satisfy the condition precedent of naming Exelon Corporation in her EEOC Charge. The Seventh Circuit examined this precise issue in *Schnellbaecher v. Baskin Clothing Company*, 887 F.2d at 126, 127 (7th Cir. 1989), and rejected the assertion that the naming of a subsidiary in a charge of discrimination is sufficient to put the parent company on notice that the plaintiff intended to hold it responsible for the alleged conduct. *See also Isaacs v. Hill's Pet Nutrition, Inc.*, 485 F.3d 383, 385 (7th Cir.), , *cert. denied*, 128 S.Ct. 564 (2007) (affirming summary judgment for parent corporation which was not

plaintiff's employer). Accordingly, the Complaint should be dismissed in its entirety as Exelon Corporation and ComEd.

**b.  Tarochione Did Not File A Timely Charge Of Discrimination**

In her Complaint, Tarochione challenges a series of discrete, allegedly discriminatory acts that occurred over the course of two periods at two distinct locations. She first challenges conduct that allegedly occurred at LaSalle Nuclear Power Station from February 25, 2006 through March 11, 2006 (Cplt., ¶¶ 15-29) and at Braidwood Nuclear Power Station from April 11, 2006 through April 24, 2006. (*Id.* at ¶¶ 31-38.) To pursue any claim of discrimination in the instant action, Tarochione must have filed her Charge within "300 days *after* the unlawful practice happened . . . ." *Morgan*, 536 U.S. at 109. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the . . . 300-day time period after the discrete discriminatory act occurred.*" Id.* at 113. Discrete acts of discrimination include, but are not limited to, "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114.

Tarochione filed her initial Charge on January 25, 2007. The 300th day prior to the filing of her Charge was March 31, 2006.  Tarochione's discrimination claim with respect to her employment at LaSalle Station is based on a series of discrete discriminatory acts – a transgendered co-worker entering the locker room; sexual comments on one occasion from her co-workers; her termination on March 11, 2006 – that occurred from February 25, 2006 through March 11, 2006 – outside the 300-day filing window. Although Tarochione alleges sexual harassment, she did not check the box on the charge form that indicated she claimed a continuing violation. (Exh. A, B.) *Morgan* is perfectly clear that when an employee alleges 'serial violations,' *i.e.*, a series of actionable wrongs, a timely EEOC charge must be filed with respect to each discrete alleged violation." *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S.Ct.  2162, 2175 (2007) (citing *Morgan*, 536 U.S. at 113); *see also Isaacs*, 485 F.3d 383; *Lewis v. City of Chicago*, 496 F.3d 645 (7th Cir. 2007).  Tarochione cannot claim that she did not know until much later that she had been the victim of alleged discrimination or harassment, since she complained about the allegedly discriminatory conduct on the same day or the day after it first occurred

(February 25, 2006) and she continued complaining about the conduct thereafter. (Cplt., ¶ 17; Exhs. A, B); *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455 (7th Cir. 2007) (letter plaintiff wrote at time of demotion demonstrates that plaintiff considered demotion to be discriminatory and demotion claim is time-barred). Because Tarochione failed to timely pursue an administrative action with respect to the discrete acts of discrimination that occurred at LaSalle Station, she is now barred from doing so in this proceeding.

### 2.   Exelon Corporation is not an employer under Title VII

Even if Tarochione had named Exelon Corporation and ComEd in her charges, dismissal as to these two defendants is still warranted.

Title VII provides for causes of action against an employee's "employer." 42 U.S.C. § 2000e-2(a), 3(a). To constitute a Title VII "employer," an entity must have "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000(b). Exelon Corporation is a holding company; it does not have any employees. (Exh. D.) Lacking any employees, Exelon Corporation is not an "employer" against which Tarochione can pursue a Title VII claim.

### 3.   ComEd was not Tarochione's employer

Although ComEd is an "employer" under Title VII, it is not, and was not during the relevant period, Tarochione's employer. All of the conduct described in the Complaint and administrative charges allegedly occurred at a nuclear generating station (either Exelon Nuclear LaSalle Station or its Braidwood Station). ComEd is an electric utility; it delivers (but does not generate) electricity to residences and businesses in northern Illinois. (Exh. D.) The generating stations at which Tarochione allegedly worked are owned and operated by GenCo. (Exh. E.) ComEd does not own any nuclear generating stations or, in particular, the Exelon LaSalle or Braidwood nuclear stations at which Tarochione alleges she worked.

### B.   THE WELL PLED ALLEGATIONS DO NOT STATE A CLAIM FOR SEX DISCRIMINATION OR SEXUAL HARASSMENT

#### 1.   The Standard For Proving Sexual Harassment

Title VII does not specifically prohibit "sexual harassment." The Supreme Court has ruled, however, that certain forms of harassment may be so pervasive and severe that the

harassment creates unequal terms and conditions of employment in violation of § 703 of that Act, 42 U.S.C. § 2000e-2. The EEOC defines "sexual harassment" as follows:

> Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when
>
> ***
>
> (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

29 CFR § 1604.11

The Supreme Court has ruled that for sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986). Moreover, Title VII is not violated merely because an employee believes that her working environment is hostile. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Harris v. Forklift Sys.,* 510 U.S. 17, 21 (1993). Title VII is violated "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (internal quotations and citations omitted).

**2. Tarochione Is Limited To The Sexual Harassment Claim Made In Her Charges**

In her initial Charge and Amended Charge, Tarochione claimed merely that she was sexually harassed by a transgendered individual (hereafter "Karen") because the individual was allowed into the women's bathroom/locker room while she was changing from her work scrubs into personal clothing. (Exhs. A, B.) The Complaint seeks to expand on that bare bones allegation by asserting that when Karen was in the locker room, she smiled at Tarochione and stared at her breasts. (Cplt., ¶ 18.) Tarochione also asserts that she was "told by co-workers" that Karen would wait until Tarochione was

changing clothes, and then follow her into the locker room to watch her undress.  (*Id*. at ¶ 21.)

As noted, Title VII requires that an employee file a charge of discrimination within 300 days of the date of the alleged violation.  42 U.S.C. 2000e-5(e)(1).  Accordingly, an employee cannot file a complaint that makes a claim that is not in the original charge of discrimination.  Where, as here, the employee makes a claim in her complaint that is related, but not the same as the claim in the charge, the proper inquiry is whether the EEOC would have reasonably been expected to investigate the claim asserted in court based on the claim asserted in the charge.  *Schnellbaecher*, 887 F.2d at 127.

Tarochione's Charges alleged merely that she was sexually harassed because Karen, a transgendered person, was allowed into the women's locker room.  (Exh. A, B.) Such allegations create a pure question of law that is easily resolved.  Because allowing a transgendered person to use the locker room of the gender with which she identifies is *not* sexual harassment of co-workers, there was no need for the EEOC to investigate whether Karen really identified as a woman or whether she was really a man who was looking for a sexual thrill.  Similarly, there was no need for the employer in this case to investigate Karen's behavior as alleged in Tarochione's EEOC charges and there was no opportunity for the EEOC to attempt to conciliate this case based on the allegation of nefarious behavior.  *See, Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) (holding that a charge must first be filed with the EEOC because, "it gives the employer some warning of the conduct about which the employee is aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the courts"). Accordingly, the question before the Court is whether allowing a transgendered person into a locker room is "sexual harassment."

### 3.  Karen's Presence In The Locker Room Was Not "Conduct Of A Sexual Nature"

Section 2-102 of the Illinois Human Rights Act, 775 ILCS § 5/2-102 makes it illegal for an employer to discriminate against an employee based on "gender related identity, whether or not traditionally associated with the person's designated sex at birth."  In other words, an employer cannot discriminate against someone because that person is acting in a way that one would not expect based on the person's anatomy or the gender designated

on the person's birth certificate.  Many states and the District of Columbia have similar prohibitions.  *See,e.g*., Cal.Gov.Code § 12949 (California); DC ST § 2-1401.01(District of Columbia); I.C.A. § 216.5 (Iowa); 5 M.R.S.A. § 4553  (Maine); N.J.S.A. 10:5-3 (New Jersey); N. M. S. A. 1978, § 28-1-7 (New Mexico); Gen.Laws 1956, § 28-5-2 (Rhode Island); 3 V.S.A. § 961  (Vermont).  This Court can take judicial notice that Gender Identity Disorder is a serious medical condition, recognized in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed. Text Rev. 2000).

Accordingly, it is clear that trangendered individuals[4] are not heterosexual men looking for a sexual thrill by seeing individuals of the opposite sex without their clothes on.  The desire to take on a gender role other than the one that a person was born with is a protected medical condition.  In fact, it is quite likely that forcing Karen to change in the men's locker room would constitute discrimination *against Karen* in violation of Illinois law.

Therefore, the primary prerequisite for a showing of sexual harassment is missing in this case.  Assuming that Karen is transgendered as alleged in the Complaint, her desire to change in the locker room of the gender with which she identifies is most definitely not "conduct of a sexual nature" within the meaning of the EEOC Guidelines.

### 4.  Karen's Presence In the Locker Room Did Not Create A Hostile Working Environment Based On Gender

Similarly, the Complaint fails to allege a hostile working environment based on sex. As noted, the Supreme Court has held that in order to succeed on a hostile environment sexual harassment case, the plaintiff must demonstrate that the environment was objectively hostile or abusive.  The fact that Tarchione may have a strong reaction against a transgendered person is not enough to create a hostile environment sexual harassment claim.

The situation Tarochione describes in her charges does not come close to describing a workplace that is permeated with discriminatory intimidation, ridicule, and insult that is

---

[4] Exelon Corporation and ComEd assume for purposes of this Motion to Dismiss that Karen is "transgendered," as alleged.  As can be seen from the Complaint, Tarochione was told that Karen is a pseudo-hermaphrodite, i.e., someone with internal female organs. (Cplt., ¶ 24.)

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Harris*, 510 U.S. 21. As noted, Tarochione's employer was under a legal obligation to accommodate individuals with gender identity issues. If the employer had forced Karen to change clothes in the men's locker room, it faced a charge by Karen for violation of the Illinois Human Rights Act. The Illinois Department of Human Rights has a work-sharing agreement with the EEOC pursuant to § 706 of Title VII, 42 U.S.C. § 2000e-5. A reasonable person would not view compliance with the Illinois law *against discrimination* and cooperation with an EEOC affiliated agency as creating a workplace permeated with discriminatory intimidation, as required by *Harris*.

It is clear that Tarochione does not believe in the Illinois law and harbors a prejudice against individuals with gender identity issues. Tarochione is entitled to her opinions, but the fact that she is biased against Karen does not create an objectively hostile environment *based on gender as to Tarochione*.

### 4.    The Complaint Fails To Allege Sex Discrimination

For similar reasons, the Complaint fails to state a claim of sex discrimination. The burden of the kinds of accommodations required by Illinois law does not necessarily fall on women more than men. If an individual with gender identity issues wished to change in the men's locker room, that desire would have to be accommodated as well.

Furthermore, the same Illinois law requires that there be no discrimination against individuals based on sexual orientation. Some men may feel very uncomfortable changing clothes in front of an openly gay man. In other words, both men and women may be uncomfortable with employer efforts to comply with Illinois law. Accordingly, such efforts are, by definition, not discrimination based on gender in violation of Title VII.

### 5.    The Remaining Well Pled Allegations Do Not Make Out A Claim

In Paragraph 27 of the Complaint, Tarochione claims that on one occasion, several male employees made sexually offensive comments related to Tarochione's complaints about Karen. Even if this allegation were the subject of a timely charge, by itself, this one-time incident does not even come close to describing a work environment permeated with abuse. This single allegation emphasizes that the gravamen of Tarochione's

complaint is the employer's decision to allow Karen to dress in the women's locker room.  Since that is not sexual harassment, Tarchione has no case.

Similarly, Tarochione alleges that in April 2006, Karen sat across from her and made suggestive, flirtatious remarks.  (Cplt., ¶ 36.)  *First*, this allegation is not in the Amended Charge.  Tarochione cannot sue based on a theory of sexual harassment that is nowhere mentioned in the underlying Charge.  *Second*, once again, the Complaint depends on the idea that Karen is a traditional, heterosexual male.   In fact, however, Tarochione concedes in her charges that Karen is transgendered.  Tarochione admits in her Complaint that when Karen attempted to use the women's locker room (as she had every right to do), Tarochione screamed at her to leave the locker room immediately.   Even if the allegations in the Complaint are looked in a light most favorable to Tarochione, it is clear that, at best, Karen was mad at Tarochione for her rude, discriminatory behavior.  In light of Tarochione's concession that Karen is  trangendered, Karen's actions are not "conduct of a sexual nature" within the meaning of the EEOC Guidelines.

### C.  The Complaint Fails to State A Claim Of Retaliation

As noted, Tarochione's claims of retaliation at the LaSalle facility are not timely.  In addition, because Tarochione was protesting against something not prohibited by Title VII, the premise for a valid retaliation claim is missing.  Under § 706 of Title VII, 42 U.S.C. § 2000e-3, it is unlawful to discriminate against someone who "has opposed any practice made an unlawful employment practice by" Title VII.  In other words, Title VII does  not  protect  individuals  who  protest  against  things  that  are  not  unlawful discrimination under Title VII, even if they use buzzwords such as sexual harassment.

This principle is best illustrated by the Seventh Circuit case of *Hamner v. St. Vincent Hosp. and Health Care Center, Inc.*, 224 F.3d 701 (7th Cir. 2000).  In that case the plaintiff alleged that he was fired because he filed a sexual harassment grievance. During the trial, however, it became clear that the plaintiff believed that harassment based on his sexual orientation was harassment based on his gender.  Although this is a plausible, understandable position, legally it is wrong.  Title VII does not prohibit discrimination on the basis of sexual orientation.  Accordingly, the plaintiff failed to prove a claim of retaliation. "If a plaintiff opposed conduct that was not proscribed by Title VII, no matter

how frequent or severe, then his sincere belief that he opposed an unlawful practice cannot be reasonable." *Id.* at 704.

Accordingly, taking all of the allegations in the charges in a light most favorable to Tarochione, she was retaliated against because she complained about having to change in the same locker room with Karen, a transgendered individual. Because this is not a practice prohibited by Title VII, the charges and Complaint fail to state a claim of retaliation.

## IV.    CONCLUSION

For the foregoing reasons, Defendants Exelon Corporation and Commonwealth Edison Company respectfully request that the Complaint be dismissed, in its entirety, as to Exelon Corporation and ComEd.

Respectfully submitted,

Dated: July 28, 2008                DEFENDANTS EXELON CORPORATION
                                    and COMMONWEALTH EDISON
                                    COMPANY


                                    By: _____s/Kent Sezer_____
                                            One of its attorneys

Tamra Domeyer (ARDC # 6210379)
Kent Sezer (ARDC #2556359)
EXELON BUSINESS SERVICES COMPANY
10 South Dearborn Street, 49th Floor
Chicago, Illinois 60603
(312) 394-7831
(312) 394-4895 fax

Attorneys For Defendants Exelon Corporation
and Commonwealth Edison Company

# Exhibit A

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2007-02644 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)*<br>**Ms. Tami Tarochione** | Home Phone *(Incl. Area Code)*<br>**(815) 434-5706** | Date of Birth |
|---|---|---|

| Street Address                City, State and ZIP Code<br>**313 Railroad Avenue, Ottawa, IL 61350** |
|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>**EXELON NUCLEAR LASALLE STATION** | No. Employees, Members<br>**201 - 500** | Phone No. *(Include Area Code)*<br>**(815) 415-4202** |
|---|---|---|

| Street Address                City, State and ZIP Code<br>**2601 North 21st Road, Marseilles, IL 61341** |
|---|

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|

| Street Address                City, State and ZIP Code |
|---|

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify below.)* | Earliest  **02-25-2006**    Latest  **04-24-2006**<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was employed by Respondent as a Laborer at the LaSalle Nuclear Power Station. Since on or about February 25, 2006 I was subjected to sexual harassment and harassment by a co-worker that is transgender, in that this individual repeatedly entered the woman's bathroom/locker room while I was changing from work scrubs into personal clothing. I complained about this to Respondent. I was subsequently subjected to rude sexual comments and inappropriate questions of a sexual nature regarding my co-worker. Beginning on or about March 3, 2006 I was subjected to criticisms about my work and my continued employment was threatened by the Labor Superintendent. On or about March 11, 2006, I was notified that I was discharged for insubordination and was replaced by another employee. On or about March 15th or 16th, 2006 I contacted Respondent's site Vice President and reported what had occurred to me. On March 30, 2006 I became aware that I was not on the union's "out of work" list. On or about April 11, 2006 I was called to report to Respondent's Braidwood facility. On April 13, 2006, I declined the request to sign a document stating that I would not sue Respondent in return for processing me at my new assignment. I was also informed that the transgender employee who had been harassing me was now working at this facility. On April 14, 2006, I went to be processed and Respondent delayed my processing so that I would have to work the night shift as did my alleged harasser. On or about April 17, 2006, I was confronted in the lunchroom by my alleged harasser and the harassment continued. Six days later Respondent laid me off from my job.

I believe I have been discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Jan 25, 2007**    *Tami M Tarochione*<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

RECEIVED EEOC
CHICAGO DISTRICT

# Exhibit B

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | **AMENDED**<br>**440-2007-02644** |

| Illinois Department Of Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Tami Tarochione** | **(815) 434-5706** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **313 Railroad Avenue, Ottawa, IL 61350** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **EXELON NUCLEAR LASALLE STATION** | **201 - 500** | **(815) 415-4202** |

| Street Address | City, State and ZIP Code |
|---|---|
| **2601 North 21st Road,  Marseilles, IL 61341** | |

RECEIVED EEOC

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

FEB 12 2007

| Street Address | City, State and ZIP Code |
|---|---|
| | |

CHICAGO DISTRICT OFC

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **02-25-2006**   Latest: **04-24-2006**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was employed as a Laborer at Respondent's LaSalle Nuclear Power Station through its contractor, Newberg – Perini Stone & Webster (Venture). Since on or about February 25, 2006 I was subjected to sexual harassment and harassment by a co-worker that is transgender, in that this individual repeatedly entered the woman's bathroom/locker room while I was changing from work scrubs into personal clothing. I complained about this to Respondent and its contractor. I was subsequently subjected to rude sexual comments and inappropriate questions of a sexual nature regarding my co-worker. I complained to Respondent's Site Vice President and the Plant Manager. I also complained to the Employers Concern Representative for Respondent's facility. No action was taken on my behalf. On or about March 11, 2006, I was notified that I was discharged for insubordination and was replaced by another employee. On or about March 15 or 16, 2006 I contacted Respondent's Site Vice President and reported what had occurred to me. On or about April 11, 2006 I was called by Respondent's contractor to report to Respondent's Braidwood facility. On April 13, 2006, I declined the request to sign a document stating that I would not sue Respondent in return for processing me at my new assignment. I was also informed that the transgender employee who had been harassing me was now working at this facility. On April 14, 2006, I went to be processed and Respondent's Head of Security delayed my processing so that I would have to work the night shift as did my alleged harasser. The Head of Security verbally abused me before my peers at the in-processing facility. Subsequently I was laid off from Respondent's facility.

I believe I have been discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended. I also believe that I have been retaliated against for complaining about discrimination in violation of Title VII

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 2-6-07                                       *Tami M Tarochione*<br>Date              *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

# Exhibit C

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Tami Tarochione**<br>313 Railroad Avenue<br>Ottawa, IL 61350<br><br>**CERTIFIED MAIL 7099 3400 0014 4053 7989** | From: Chicago District Office<br>500 West Madison St<br>Suite 2800<br>Chicago, IL 60661 |

RECEIVED

MAR 03 2008

Labor & Employment Dept.

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2007-02644** | **Donald Marvin,**<br>**Investigator** | **(312) 353-8198** |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

_John P. Rowe_    2-29-08

**John P. Rowe,**
**District Director**

*(Date Mailed)*

cc:     **EXELON NUCLEAR LASALLE STATION**

# Exhibit D

```
<DOCUMENT>
<TYPE>8-K
<SEQUENCE>1
<FILENAME>0001.txt
<TEXT>
```

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, DC 20549
FORM 8-K


CURRENT REPORT


Pursuant to Section 13 or 15(d) of the Securities
Exchange Act of 1934



January 12, 2001
(Date of earliest
event reported)



EXELON CORPORATION
(Exact name of registrant as specified in its charter)



| Pennsylvania | 1-16169 | 23-2990190 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (SEC file number) | (IRS Employer Identification Number) |



37th Floor, 10 South Dearborn Street
Post Office Box A-3005
Chicago, Illinois 60690-3005
(Address of principal executive offices)

Registrant's telephone number, including area code:
(312) 394-4321

```
<PAGE>
```

ITEM 5. OTHER EVENTS

On January 12, 2001, Exelon Corporation issued the following press release:

Exelon Corporation Restructures Its Generation and Enterprises Businesses

CHICAGO, January 12, 2001-- Exelon Corporation (EXC) today announced that it has restructured its competitive generation and enterprises businesses. This is a significant step in the corporate restructuring that was outlined as an integration objective when Exelon was formed on October 20, 2000 by the merger of Unicom Corporation and PECO Energy.

Under its new business structure, Exelon will serve as a holding company for a group of subsidiaries. The corporate restructuring separates Exelon's regulated

energy delivery business from its competitive generation and wholesale and other businesses, streamlines the process for managing, operating and tracking financial performance of its multiple lines of business, and aligns its legal and management structure.

ComEd and PECO, Exelon's two regulated energy delivery businesses, will continue to operate in their respective service territories. ComEd delivers electricity to more than 3.4 million customers in Northern Illinois. PECO delivers electricity to 1.5 million customers and 425,000 natural gas customers in a five-county Philadelphia region.

Through the restructuring, Exelon has created Exelon Ventures Company, which is comprised of competitive businesses and assets, including Exelon Generation and Exelon Enterprises.

Exelon Generation combines the generation assets formerly held by PECO Energy and ComEd. The portfolio includes 46 GW of power with a nationwide reach and strong positions in the Midwest and Mid-Atlantic. Its nuclear fleet is the largest in the United States and the third largest commercial fleet in the world. Power Team, Exelon Generation's wholesale power marketing business, operates 24 hours a day and is one of the largest wholesale power marketers in North America.

Exelon Generation's portfolio, expertise, scope and ability to enter into energy contracts provides the ComEd and PECO service territories with sufficient power supply.

Exelon Enterprises combines the competitive businesses formerly held by PECO Energy and Unicom Corporation. Exelon Enterprises focuses its business activities in the areas of energy, energy services, infrastructure and communications, creating long-term future growth through extraordinary service, innovative technology and new product applications.

"This new structure gives us a higher degree of flexibility as we pursue our growth strategies in competitive sectors of the energy industry and provides us with greater clarity around the financial performance of all of our investments," said Randall Mehrberg, Exelon Senior Vice President and General Counsel. "Given today's continuously changing business landscape, we believe

<PAGE>

this structure positions us for future growth and to meet our financial commitments."

In addition, Exelon formed Exelon Business Services Company, which provides a full range of support services such as legal, human resources and financial services to Exelon business units.

Exelon Corporation is one of the nation's largest electric utilities with approximately five million customers and more than $12 billion in annual revenues. The company has one of the industry's largest portfolios of electricity generation capacity, with a nationwide reach and strong positions in the Midwest and Mid-Atlantic. Exelon distributes electricity and gas to approximately five million customers in Illinois and Pennsylvania. The company also has holdings in such competitive businesses as energy, infrastructure services, energy services and telecommunications. Exelon is headquartered in Chicago and trades on the NYSE under the ticker EXC.

<PAGE>

SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

                                    EXELON CORPORATION

                                    /S/  Ruth Ann M. Gillis
                                    ------------------------------
                                    Principal Financial Officer

January 16, 2001

</TEXT>
</DOCUMENT>

*SEC Info*    Home    Search    My Interests    Help    Sign In    *Please Sign In*

# Exelon Corp · 8-K · For 1/12/01

### Filed On 1/16/01 10:33am ET   ·   SEC File 1-16169   ·   Accession Number 950159-1-27

| Find: | | in | this entire Filing. | Show | Docs searched | and | every "hit". |

Help...    *Wildcards:* ? (any letter). * (many). *Logic:* for Docs: & (and). | (or); for Text: | (anywhere). "(&)" (near).

| As Of | Filer | Filing | As/For/On | Docs:Pgs | Issuer |
|---|---|---|---|---|---|
| 1/16/01 | Exelon Corp | 8-K(5) | 1/12/01 | 1:4 | |

---

### Current Report   ·   Form 8-K
### Filing Table of Contents

| Document/Exhibit | Description | Pages | Size |
|---|---|---|---|
| 1: 8-K | Current Report | 4 | 14K |

---

### Document Table of Contents

| *Page*   (sequential) | (alphabetic) | Top |
|---|---|---|
| 1  1st Page | • Alternative Formats (RTF, XML, et al.) | |
| 2  Item 5. Other Events | • Other Events | |

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, DC 20549
**FORM 8-K**

**CURRENT REPORT**

Pursuant to Section 13 or 15(d) of the Securities
Exchange Act of 1934

January 12, 2001
(Date of earliest
event reported)

**EXELON CORPORATION**
(Exact name of registrant as specified in its charter)

| Pennsylvania | 1-16169 | 23-2990190 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (SEC file number) | (IRS Employer Identification Number) |

37th Floor, 10 South Dearborn Street
Post Office Box A-3005
Chicago, Illinois 60690-3005
(Address of principal executive offices)

Registrant's telephone number, including area code:
(312) 394-4321

**ITEM 5. OTHER EVENTS**

On January 12, 2001, Exelon Corporation issued the following press release:

Exelon Corporation Restructures Its Generation and Enterprises Businesses

CHICAGO, January 12, 2001-- Exelon Corporation (EXC) today announced that it has restructured its competitive generation and enterprises businesses. This is a significant step in the corporate restructuring that was outlined as an integration objective when Exelon was formed on October 20, 2000 by the merger of Unicom Corporation and PECO Energy.

Under its new business structure, Exelon will serve as a holding company for a group of subsidiaries. The corporate restructuring separates Exelon's regulated energy delivery business from its competitive generation and wholesale and other businesses, streamlines the process for managing, operating and tracking financial performance of its multiple lines of business, and aligns its legal and management structure.

ComEd and PECO, Exelon's two regulated energy delivery businesses, will continue to operate in their respective service territories. ComEd delivers electricity to more than 3.4 million customers in Northern Illinois. PECO delivers electricity to 1.5 million customers and 425,000 natural gas customers in a five-county Philadelphia region.

Through the restructuring, Exelon has created Exelon Ventures Company, which is comprised of competitive businesses and assets, including Exelon Generation and Exelon Enterprises.

Exelon Generation combines the generation assets formerly held by PECO Energy and ComEd. The portfolio includes 46 GW of power with a nationwide reach and strong positions in the Midwest and Mid-Atlantic. Its nuclear fleet is the largest in the United States and the third largest commercial fleet in the world. Power Team, Exelon Generation's wholesale power marketing business, operates 24 hours a day and is one of the largest wholesale power marketers in North America.

Exelon Generation's portfolio, expertise, scope and ability to enter into energy contracts provides the ComEd and PECO service territories with sufficient power supply.

Exelon Enterprises combines the competitive businesses formerly held by PECO Energy and Unicom Corporation. Exelon Enterprises focuses its business activities in the areas of energy, energy services, infrastructure and communications, creating long-term future growth through extraordinary service, innovative technology and new product applications.

*"This new structure gives us a higher degree of flexibility as we pursue our growth strategies in competitive sectors of the energy industry and provides us with greater clarity around the financial performance of all of our investments,"* said Randall Mehrberg, Exelon Senior Vice President and General Counsel. "Given today's continuously changing business landscape, we believe

this structure positions us for future growth and to meet our financial commitments."

In addition, Exelon formed Exelon Business Services Company, which provides a full range of support services such as legal, human resources and financial services to Exelon business units.

Exelon Corporation is one of the nation's largest electric utilities with approximately five million customers and more than $12 billion in annual revenues. The company has one of the industry's largest portfolios of electricity generation capacity, with a nationwide reach and strong positions in the Midwest and Mid-Atlantic. Exelon distributes electricity and gas to approximately five million customers in Illinois and Pennsylvania. The company also has holdings in such competitive businesses as energy, infrastructure services, energy services and telecommunications. Exelon is headquartered in Chicago and trades on the NYSE under the ticker EXC.

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**EXELON CORPORATION**

/S/  *Ruth Ann M. Gillis*
------------------------------
Principal Financial Officer

January 16, 2001

**Dates Referenced Herein** *and* **Documents Incorporated By Reference**

| _This 8-K Filing_ | _Date_ ▼ | _Referenced-On Page_ | | _Other Filings_ |
|---|---|---|---|---|
| | | _First_ | _Last_ | |
| | 10/20/00 | 2 | | 8-K, 8-K/A, U5A |
| For The Period Ended | 1/12/01 | 1 | 2 | |
| Filed On / Filed As Of | 1/16/01 | 4 | | |

Top                                                    List All Filings

Filing Submission  -   Alternative Formats (Word / Rich Text, HTML, Plain Text, SGML, XML, et al.)

Copyright © 2008 **Fran Finnegan & Company**  All Rights Reserved.
*www.secinfo.com - Mon, 14 Jul 2008 17:01:35.1 GMT - Privacy - Help*

# Exhibit E



Index | Site Map | FAQ | **Facility Info** | Reading Rm | New | Help | Glossary | Contact Us      Google Custom Search | Search | Search Options

Home > Facility Info Finder > Operating Nuclear Power Reactors by Location or Name > La Salle 1

# La Salle 1

## Boiling Water Reactor



11 MI SE of Ottawa, IL

Docket Number: 05000373

Operating License: Issued - 04/17/1982, Expires - 04/17/2022

Operator: Exelon Generation Co., LLC

For questions about this facility, contact the NRC Public Affairs Office in Region 3

Facility Performance Information:

Current Performance Summary
Inspection Reports
Escalated Enforcement Actions Issued

Electrical Output:          1111 MWe

Reactor Vendor/Type:        General Electric Type 5

Containment Type:           Wet, Mark II

More Reactor Information:

Current Power Reactor Status Report
Reactor Quick Links
Other Reactors in Illinios
NRC Emergency Preparedness and Response
FEMA's State Offices and Agencies of Emergency Management  EXIT
Plant Specific Items of Interest

Privacy Policy | Site Disclaimer
*Thursday, February 14, 2008*



Index | Site Map | FAQ | **Facility Info** | Reading Rm | New | Help | Glossary | Contact Us

Google Custom Search [Search] Search Options



Home > Facility Info Finder > Operating Nuclear Power Reactors by Location or Name > Braidwood 1

# Braidwood 1

## Pressurized Water Reactor



24 MI SSW of Joilet, IL

Docket Number: 05000456

Operating License: Issued - 07/02/1987, Expires - 10/17/2026

Operator: Exelon Generation Co., LLC

For questions about this facility, contact the NRC Public Affairs Office in Region 3

Facility Performance Information:

Current Performance Summary
Inspection Reports
Escalated Enforcement Actions Issued

Electrical Output:            1161 MWe

Reactor Vendor/Type:         Westinghouse Four-Loop

Containment Type:            Dry, Ambient Pressure

More Reactor Information:

Current Power Reactor Status Report
Reactor Quick Links
Other Reactors in Illinois
NRC Emergency Preparedness and Response
FEMA's State Offices and Agencies of Emergency Management [EXIT]
Plant Specific Items of Interest

Privacy Policy | Site Disclaimer
*Thursday, February 14, 2008*