**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TAMI TAROCHIONE, | ) | PLAINTIFF DEMANDS TRIAL |
| Plaintiff, | ) | BY JURY |
| | ) | |
| v. | ) | Case No.  08 C 3147 |
| | ) | |
| EXELON CORPORATON, a Pennsylvania | ) | Judge:  JUDGE KENNELLY |
| corporation, individually and d/b/a | ) | |
| COMMONWEALTH EDISON CO., an Illinois | ) | Magistrate Judge:  JUDGE DENLOW |
| corporation, EXELON GENERATION LLC, a | ) | |
| Pennsylvania limited liability company, THE | ) | |
| SHAW GROUP, INC., a Louisiana corporation, | ) | |
| d/b/a STONE & WEBSTER, INC., a Louisiana | ) | |
| corporation, PERINI CORPORATION, a | ) | |
| Massachusetts corporation, d/b/a NEWBERG- | ) | |
| PERINI, INC., an Illinois Corporation, | ) | |
| NEWBERG/PERINI- STONE & WEBSTER, an | ) | |
| Illinois joint venture, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## FIRST AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff, TAMI TAROCHIONE, by and through her attorney, Philip

W. Collins III, and complaining of Defendants, states as follows:

### NATURE OF CLAIM

1.      This is an action seeking redress for discrimination in violation of Title VII, 42 U.S.C.

§§2000e *et seq.*, of the Civil Rights Act of 1991 as amended.

### JURISDICTION and VENUE

2.      Jurisdiction of this Court is proper under Title 28 U.S.C. §§1331 and 1343.

3.      Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 42 U.S.C. §2000e-5(f)(3).

**PARTIES**

4.      Tami Tarochione ("Plaintiff") is a female citizen of the United States and was a resident of Ottawa, Illinois at all times relevant hereto.

5.      Defendant, Exelon Corporation ("Exelon") was a Pennsylvania corporation doing business in Illinois, and was the parent company of, and was doing business as Common Wealth Edison Company ("ComEd") at all times relevant hereto.

6.      Defendant, Commonwealth Edison Company ("ComEd"), was an Illinois corporation doing business in Illinois at all times relevant hereto.

7.      Defendant, Exelon Generation LLC ("ExGen") was a Pennsylvania limited liability company doing business in Illinois at all times relevant hereto.

8.      Defendant, The Shaw Group, Inc., ("The Shaw Group") was a Louisiana corporation doing business in Illinois and was the parent company of Stone & Webster at all times relevant hereto.

9.      Defendant, Stone & Webster, Inc. ("Stone & Webster") was a Louisiana corporation doing business in Illinois at all times relevant hereto..

10      Defendant, Perini Corporation ("Perini"), was a Massachusetts corporation doing business in Illinois and was the parent company of Newberg-Perini at all times relevant hereto.

11.      Defendant, Newberg-Perini, Inc., ("Newberg-Perini"), was an Illinois corporation doing business in Illinois at all times relevant hereto.

12.     Defendant, Newberg/Perini Stone & Webster, was an Illinois joint venture doing business in Illinois at all times relevant hereto.

13.     At all times relevant hereto, Plaintiff was an "employee," as defined under 42 U.S.C. 2000e (f).

14.     At all times relevant hereto, all named Defendants were "employers" as defined under 42 U.S.C. 2000e(b).

## PROCEDURAL REQUIREMENTS

15.     Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII, 42 U.S.C 2000e *et seq.*, as amended by the Civil Rights Act of 1991.  Plaintiff, *pro se*, timely filed charges of discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC") on February 12, 2007 (See Exhibit A) and included with said Charges of Discrimination, an eight (8) page type written summary of events occurring between February 25, 2008 and April 24, 2006 (See Exhibit B), and received "Notice[s] of Right to Sue," on March 3, 2008.  (See Exhibit C).

## FACTUAL BACKGROUND

16.     Plaintiff was employed as a laborer by Defendants at the La Salle and Braidwood Nuclear Power Stations at all times relevant hereto.

17.     On or about February 25, 2006, Plaintiff, while changing out of her work scrubs in the women's locker room, was confronted by an alleged "transgender" employee ("Wendall") that was dressed as a woman, who was staring at Plaintiff while she was in her underwear.

18.     Plaintiff told Wendall to leave immediately, but Wendall argued with Plaintiff that he was a woman and was told by management that he could use the women's locker room and that his name was "Karen."

19.     Plaintiff arranged a meeting with Dean Sac ("Sac"), the Project Site Manager, first thing the next morning, February 26, 2006, and told was told in a hostile manner that Wendall was a woman and that Plaintiff should talk to Pat O'Connor ("O'Connor"), another manager.

20.     Also on February 26, 2006, at the end of her shift, at approximately 7 p.m., Plaintiff was again confronted by Wendall in the ladies locker room while she was undressed, just smiling at her while staring at Plaintiff's breasts.

21.     Plaintiff then screamed at Wendall to get out of the locker room, to which Wendall replied, "I can be in here. I have permission from Dean Sac and Pat O'Connor to be in here."

22.     Plaintiff quickly threw on her top and immediately left the locker room crying and feeling sick to her stomach, while Wendall stood and smiled.

23.     Plaintiff had been told by co-workers that Wendall would wait until Plaintiff went into the locker room to change, and would then follow her into the locker room to watch her undress.

24.     At a subsequent meeting with management, Plaintiff suggested that Wendall use a bathroom that was available and adequate for Wendall's needs, but was told by management that Wendall would continue to be allowed to use the women's locker room.

25.     On or about February 28, 2006, Plaintiff again met with O'Connor and was told that Wendall had agreed to use another bathroom. It was at this meeting that O'Connor, referred to Wendall as Wendall, rather than as "Karen."

26.     During that same meeting, O'Connor told Plaintiff that Wendall was a hermaphrodite, but Plaintiff responded that he was a transsexual, not a hermaphrodite, and that she felt this had all been a big joke, which prompted O'Connor to raise his hand and put his finger in Plaintiff's face and told her that if she didn't "let it go," she would no longer have a job, to which Plaintiff said that she was going to meet with Susan Landahl ("Landahl"), Site Vice President for Exelon.

4

27.    Shortly after that encounter with O'Connor, Plaintiff was told by her union business agent that she could not file a grievance; that he would handle it.

28.    Plaintiff was later told by another co-worker who had grown up with Wendall, that Wendall was in fact a male, and that he had been married, and that he and his wife had adopted two children and were later divorced. Plaintiff then went to a bathroom to throw up because she was so upset.

29.    On or About March 9, 2006, several male employees made sexually offensive comments to Plaintiff when she arrived for work at 7 a.m., saying they would like to see her naked too, with some asking if Plaintiff's breasts were real or fake like Wendall's.

30.    At approximately 5:45 p.m., Plaintiff met with Landahl and informed her of all that had taken place and that she, Plaintiff, had informed both Sac and O'Connor of everything, to which Plaintiff was told that Landahl would speak to both Sac and O'Connor. The Plant Manager had been present also. Plaintiff also reported this to Dan Barnett ("Barnett"), also a member of Defendant Exelon's management at the Exelon La Salle Nuclear Station.

31.    Two days later, Plaintiff was fired allegedly for insubordination.

32.    Plaintiff then went to meet with her Union Business Agent, David Raikes ("Raikes"), saying that she wanted to file a grievance. Raikes told her that if she filed a grievance, she "would never work out there again."

33.    On or about April 11, 2006, Plaintiff was told by Local 393 to report to Defendants' Braidwood Nuclear Station to again work for Defendants.

34.    On or about April 13, 2006, Plaintiff received a telephone call from Local Union 393 and was told by Raikes that Defendants would not process her in order for her to begin work because

they had heard a rumor that Plaintiff was going to sue Defendants. Raikes then said, "If this is true, you're going to be sorry."

35.     Raikes continued threatening Plaintiff, telling her that she "would be crazy to sue them;" "that [Defendants] have more money than God. They can get the best lawyers in the country." Raikes also informed Plaintiff that Wendall would also be working now at the Braidwood facility, but on the midnight shift, as Plaintiff would be working days.

36.     Plaintiff reported to work on April 14, 2006, for processing in order to be allowed entrance to the facility, but was denied access by Rosario Kahn ("Kahn"), Defendants' head of security, who demanded to see Plaintiff's divorce papers, documentation given to Defendants three years prior.  Plaintiff then arranged for her divorce papers to be faxed to Kahn and to Robert Speek ("Speek"), Defendants' "Corporate Employee Concerns Investigator."

37.     At approximately 3 p.m., Plaintiff was called by Kahn who said she had been cleared to enter the plant. But when Plaintiff attempted to enter the plant, she was told by security that because she was the last one processed, she would have to work the night shift, which meant that she was now being assigned the same shift at a different facility again having to work with Wendall.

38.     On or about April 17, 2006, Plaintiff reported for work on the night shift.  Later on during her shift, when Plaintiff entered the lunch room to eat, she saw Wendall, who's name badge now said "Karen Drummond."  He smiled and winked at Plaintiff who ignored him and went to sit down to eat.  Wendall, now "Karen," went and sat directly across from Plaintiff and repeatedly made suggestive flirtatious remarks to Plaintiff, forcing Plaintiff to leave.

39.     For the next six days, Plaintiff would become sick and throw up both before and after work because of the ongoing remarks from Wendall and co-workers about what had happened at the La Salle facility.

40.     Plaintiff was laid off after only a weeks' work.

## COUNT I

## SEXUAL DISCRIMINATION IN VIOLATION OF TITLE VII

41.     Plaintiff repeats and reasserts the allegations in paragraphs 1 through 38 as though fully pleaded and set forth herein.

42.     Plaintiff has a federally protected right to equal treatment in the workplace.

43.     Because of Plaintiff's gender, she was discriminated against in violation of Title VII by Defendants based upon, but not limited to, the facts set forth in all preceding paragraphs.

44.     Similarly situated male employees were not subjected to the same kind of discriminatory behaviors, actions, words, etc. as was Plaintiff, a female.

45.     Defendants' wrongful acts, individually and/or by and through their agents, were deliberate, intentional, willful, wanton, and malicious and in total disregard of, and reckless indifference to Plaintiff's rights under Title VII.

46.     As a direct and proximate result of the acts engaged in by Defendants, Plaintiff suffered severe financial damages, including but not limited to loss of pay, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment; sever emotional distress, humiliation, embarrassment; physical harm, exacerbation of medical conditions resulting in additional medical expenses; damage to her reputation, attorney's fees, costs, and other damages allowed under Title VII.

## COUNT II

## SEXUAL HARASSMENT UNDER TITLE VII

47.     Plaintiff repeats and reasserts the allegations in paragraphs 1 through 44 as though fully

pleaded and set forth herein.

48.     By the foregoing actions of Defendants, Plaintiff was sexually harassed in violation of

Title VII, in that Defendants created a hostile and offensive work environment which

unreasonably interfered with Plaintiff's work performance, and seriously affected her physical,

financial, and psychological well-being.

## COUNT III

## RETALIATION UNDER TITLE VII

49.     Plaintiff repeats and reasserts the allegations in paragraphs 1 through 46 as though fully

pleaded and set forth herein.

50.     In retaliation for Plaintiff complaining to Defendants of those facts set forth above, but

not limited to same, Plaintiff was fired by Defendants allegedly for insubordination from the La

Salle Nuclear Station, was deliberately forced to work the midnight shift with Wendall at the

Braidwood facility, and was then laid off after only a week's work.

51.     Defendants, individually and through their agents, willfully and wantonly violated

Plaintiff's federally protected rights against retaliation under Title VII with reckless disregard for

same.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants in an amount

that will fully and justly compensate her for her injuries and damages of the past and future,

including but not limited to loss of pay, past and future, loss of career opportunities, loss of

future earnings and other incidentals and benefits of employment; sever emotional distress,

humiliation, embarrassment; physical harm, exacerbation of medical conditions resulting in

additional medical expenses; damage to her reputation, attorney's fees, costs, and other damages

allowed under Title VII. As these acts of Defendants were willful and wanton, and were

committed with reckless indifference to the federally protected rights of Plaintiff, punitive and/or

exemplary damages are also due Plaintiff, as well as any further relief deemed appropriate by the

Court.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Respectfully submitted,

s/Philip W. Collins III

Attorney for Plaintiff

Law Offices of Philip W. Collins III LLC
940 E. Diehl Road, Suite 110-B
Naperville, Illinois 60563
(630) 505-1424
Atty. No. 620419

# EXHIBIT A

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | AMENDED  440-2007-02644 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Tami Tarochione** | **(815) 434-5706** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **313 Railroad Avenue, Ottawa, IL 61350** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **EXELON NUCLEAR LASALLE STATION** | **201 - 500** | **(815) 415-4202** |

| Street Address | City, State and ZIP Code |
|---|---|
| **2601 North 21st Road, Marseilles, IL 61341** | |

RECEIVED EEOC

FEB 12 2007

CHICAGO DISTRICT OFC

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **02-25-2006**   Latest **04-24-2006**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was employed as a Laborer at Respondent's LaSalle Nuclear Power Station through its contractor, Newberg – Perini Stone & Webster (Venture). Since on or about February 25, 2006 I was subjected to sexual harassment and harassment by a co-worker who is transgender, in that this individual repeatedly entered the woman's bathroom/locker room while I was changing from work scrubs into personal clothing. I complained about this to Respondent and its contractor. I was subsequently subjected to rude sexual comments and inappropriate questions of a sexual nature regarding my co-worker. I complained to Respondent's Site Vice President and the Plant Manager. I also complained to the Employers Concern Representative for Respondent's facility. No action was taken on my behalf. On or about March 11, 2006, I was notified that I was discharged for insubordination and was replaced by another employee. On or about March 15 or 16, 2006 I contacted Respondent's Site Vice President and reported what had occurred to me. On or about April 11, 2006 I was called by Respondent's contractor to report to Respondent's Braidwood facility. On April 13, 2006, I declined the request to sign a document stating that I would not sue Respondent in return for processing me at my new assignment. I was also informed that the transgender employee who had been harassing me was now working at this facility. On April 14, 2006, I went to be processed and Respondent's Head of Security delayed my processing so that I would have to work the night shift as did my alleged harasser. The Head of Security verbally abused me before my peers at the in-processing facility. Subsequently I was laid off from Respondent's facility.

I believe I have been discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended. I also believe that I have been retaliated against for complaining about discrimination in violation of Title VII

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 2-6-07    *Tami M. Tarochione* <br> Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2007-02877 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Tami Tarochione** | **(815) 434-5706** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **313 Railroad Avenue, Ottawa, IL 61350** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **NEWBERG PERINI STONE & WEBSTER (VENTURE)** | **15 - 100** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **36400 South Essex Road, Wilmington, IL 60481** | RECEIVED EEOC |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | FEB 12 2007 | |

| Street Address | City, State and ZIP Code |
|---|---|
| | CHICAGO DISTRICT OFC |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|

| | | | | Earliest | Latest |
|---|---|---|---|---|---|
| ☐ RACE | ☐ COLOR | ☒ SEX | ☐ RELIGION | ☐ NATIONAL ORIGIN | **02-25-2006** | **04-24-2006** |
| ☒ RETALIATION | ☐ AGE | ☐ DISABILITY | ☐ OTHER (Specify below.) | | |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was employed by the above named Respondent as a Laborer at its client's, Exelon, LaSalle Nuclear Power Station. Since on or about February 25, 2006 I was subjected to sexual harassment and harassment by a co-worker that is transgender, in that this individual repeatedly entered the woman's bathroom/locker room while I was changing from work scrubs into personal clothing. On Feb 26–27, 2006, Respondent's Labor Oppimicadion HIR and Project Site Manager threatened me with the loss of my job if I did not keep quiet about the transgender individual. I complained about this to Respondent. I was subsequently subjected to rude sexual comments and inappropriate questions of a sexual nature regarding my co-worker. Beginning on March 3, 2006, I was subjected to criticisms about my work and the Labor Superintendent threatened my continued employment. On or about March 11, 2006, I was notified that I was discharged for insubordination and was replaced by another employee. On or about March 15 or 16, 2006 I contacted Respondent's Site Vice President and reported what had occurred to me. On or about April 11, 2006 I was called by Respondent to report to its client's Braidwood facility. On April 13, 2006, I declined the request to sign a document stating that I would not sue Respondent in return for processing me at my new assignment. I was also informed that the transgender employee who had been harassing me was now working at this facility. On or about April 24, 2006, I was discharged.

I believe I have been discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended. I also believe that I was retaliated against for complaining about discrimination in violation of Title VII.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 2-6-07    *Tami M. Tarochione*<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

# EXHIBIT B

2/25/06  I was in the women bathroom getting ready to change out of my scrubs.  I was sitting on the bench in my thong underwear and top.  I went to stand up to put my pants on and when I looked up, I saw a man staring at me.  I asked him to please leave the woman's bathroom.  He agued with me and said he was a woman.  I said Sir you are not a woman.  Your badge says you are Wendell Drummond.  He said his name was Karen.  That he was a woman.  I asked him if he could give birth.  He said yes.  He said he had given birth twice.  I stated…You have an Adams apple.  Your breasts are fake and you have a wig on.  I was getting very upset because he would not leave.  I asked him again to please leave the woman's bathroom.  He said he did not have to leave because he had Pat O' Connor( Labor Oppimicadion HIR), and Dean Sac's (Project Site Manager) permission to be in the woman's bathroom.  He walked out and came back in ten minutes later.  I was so upset I stormed out of the bathroom and went back into the plant.  People where asking me if I was all right.  I told them no.  I just had a horrible experience.  I finished my work.  I went to the lunchroom to get my bag to leave for home.

02/26/06 7:20 AM  I spoke to my Stewart Brian Eitutis about the man in the woman's restroom / locker room..  I asked him if he could arrange for him and me to speak with Dean Sac about the matter.
8:10 AM  I went to Dean Sac's office to talk to him about the situation.  He was hostile toward me.  I stated that there was a man named Wendell Drummond in the women bathroom / locker room where I change clothes.  I stated that I was very upset because he caught me with private areas of my body exposed.  Dean stated that Wendell was a woman and that I would have to go along with it weather I liked it or not.  I started asking questions.  Why does his badge say Wendell and not Karen if he is a woman?  I questioned / reasoned with Mr. Sac, that your name is on your social security card and your driver's license.  Your employee badge is printed with your legal name.  Security should not allow an employee to enter a nuclear facility using a false name or alias.  An example of this situation would be a girl named Jennifer who's name was miss spelled…it had an extra f (two ff instead of one f (Jenniffer) .  Jennifer was called by the head of security Rosario Kahn and harassed unmercifully numerous times until the issue was cleared up.  She was in tears.  I believe she may even have been placed on hold and not allowed to work until it was cleared up.
Dean Sac stated that it was not against the law to have a sex change.  I responded that it is not against the law but that you have to abide by the law during the process.  It was clear that Dean was getting upset with the conversation and suggested strongly that I should speak to Pat O'Connor.

Dean made arrangements so that I could speak to Pat O'Connor the next day.

02/26/06  7 PM I went into the women bathroom getting ready to go home after my shift.  I was taking off my scrubs.  On this occasion, I had on my brace for my arm. The brace goes under both armpits to hold my left arm in place. (I have a bad left arm from a previous injury) I did not wear a bra into the plant that day because the brace and the bra together irritate my arm and back and under arm. I took off my top and was getting ready to take off my brace.  I undid my brace and had nothing on my upper body.  I was reaching into my bag to get out my bra and put my brace away.  When I looked up there

was Wendell staring at my breasts. He looked as if he was enjoying the situation. He was smiling. Like he wanted to keep staring at my chest. I was so upset I screamed Please get out of here now! He laughed and said I do not have to. I have permission from Dean Sac and Pat O'Connor to be in here. I threw my top on and ran out of the women's bathroom. I was crying and I ran into Joe Fiesel (Maintence Services Manager). He works the back shift for Exelon. He asked me what was wrong. I told Joe that there was a man in the woman's bathroom. And that this had to stop. I was not going to tolerate having a man watch me undress in the woman's locker / bathroom. I went to the lunchroom, grabbed my bag and ran out of the building. I got half way to the MAF (Main Access facility) building and had to turn around and go back. I was so upset I forgot to turn in my ED (Electronic device for entering a nuclear plant). When I was going back to turn in my ED I ran into Joe Fiesel again. He asked me if he could talk to me. I said yes. Joe Fiesel took me into an office with Dave Pyatt the afternoon / night Plant Site Manager. I told Joe and Dave the situation. That there has been a man in the woman's locker / restroom where I change clothes. He said he was aware of the person I was talking about. He said he was told by Pat O'Connor and Dean Sac that he was a woman. That this person was entitled to use the ladies restroom. In the plant earlier that day, I was told by numerous male employees that Wendell was using the men's bathroom earlier in the outage. I was told that the men had been teasing Wendell about his breast implants. Calling him names like freak, want to be woman, and that he had been kicked out of the men's bath / locker room because he was not wanted in the men's bath / locker room by the other men working at the nuclear plant. Dave Pyatt then told me that Pat O'Connor had told him that Wendell was a Hermaphrodite. He had spoken to Pat O'Connor about the men teasing him. Mr. O'Connor took it upon himself to let Wendell use the woman's bath / locker room. Dave stated that Pat O'Connor told him, there had been an issue with Wendell at the Byron nuclear station previously and that the women there took a vote and allowed Wendell to use the same bathroom as they used. I said this was not Byron. No one asked me, informed me, and no one to my knowledge took any vote. Why should I tolerate a man staring at me in my changing area. How would you feel if your wife or daughter were put in the same situation as I am. Dave stated he would not like that situation at all. He seemed to be very understanding. I was so upset I was crying and visibly shaken. Dave said he would arrange for me to speak with Pat O'Connor Monday morning when I come into start my shift. ( I was working 12-hour shifts, my shift overlapped the night shift)

02/27/06 I spoke to my Stewart and asked him to be present when I spoke with Dean Sac and Pat O' Connor. About 8:30 AM, my Stewart Brian Eitutis and I went to Dean Sac's office to speak with Dean. Pat O'Connor could not be present because he was at another nuclear facility. I asked Dean how he became aware that Wendell was a woman. Dean stated that Wendell said he was a woman. I asked if there was any medical proof that Wendell was a woman. Dean responded no. I asked Dean to look at Wendell's security questionnaire that he filled out upon entering the LaSalle Station nuclear facility. ( My experience is that if you lie on this questionnaire you are escorted out of the nuclear facility). I was told by Dean that the information on Wendell's questionnaire was confidential and he did not have access to the information. I stated that the second to the last page of the in processing questionnaire states that any agent of Exelon in a position to

process persons for work has access to the information and it may be shared with contractors and agents for performing activities to suitability enter for unescorted access to a nuclear facility. I have signed the paper many times and had read it.

Dean finally said that he believed the questionnaire stated that Wendell was male. He suggested we have a conference with Pat O'Connor later that afternoon when he was available.

3:00 PM My Stewart and I went to speak with Dean Sac and Pat O'Connor. I asked Mr. O'Connor why a man (Wendell) was being allowed to use the women's bath / locker room where I change clothes. Mr. O' Connor stated that Karen (the man who' s name badge said Wendell Drummond) had a problem that he was a hermaphrodite. That the men who worked at the facility did not want him in their bathroom. Mr. O'Connor and Mr. Sac both told me that Wendell / Karen had given birth to two children. (Both Dean and Pat kept addressing Wendell as Karen through out our conversations. I corrected them. That his badge said Wendell and they should address him by the name on his badge). I asked to see a birth certificate for Wendell and his children's. They were very upset with me and said we should have a meeting with all the women who work at the facility to discuss the situation. I asked if any of the other women had been caught in, a situation where they had body parts exposed other then me. Dean Sac and Pat O'Connor both stated not to their knowledge. I also asked them if they had a wife or daughter in my situation how they would feel about it. They both agreed they would not like it. Dean Sac asked me if I had any prior issues. I stated no. I do have a problem with a man being in my locker room watching me change clothes and catching me with my clothes off. I had been told numerous times by other people that Wendell would watch for me to go change and would follow me into the locker room. He would know that I would be changing and would time it so he could walk in while I was undressed.. I finally agreed to have a meeting with all the other women in attendance who worked at the plant.

Between 5:00 and 5:30 PM,   All women from the day shift and their Stewart's gathered into the conference room. Mr. Pat O'Connor stated that what ever was said in the meeting would be kept confidential. That anything said in the meeting would not jeopardize our job. He started out explaining to the women that Wendell had a medical problem. He explained that Wendell was a hermaphrodite and that he was born with both genders. A penis and a clitoris. I asked how Mr. O'Connor knows this information. Does he have any kind of medical proof. Mr. O'Connor said Karen (Wendell) had been married to a man that had passed away and that he had given birth to two children. Mr. O'Connor then stated that he did not have medical proof that Karen was a hermaphrodite. However, there had been questions at the MAF and a female security guard took Karen (Wendell) into the restroom and determined that he was a female. I said that I found that difficult to believe. I believe it would be illegal for a security person to examine any person's genitals. Did this security person have a medical background? Mr. O'Connor stated that he has a woman's anatomy. That he has breasts. I said, fake breasts, a wig, and bad make up does not make you a woman. I asked a couple more questions. Two other women asked a question. They were Becky Martinez and Tracy Cunningham. At that point Pat O'Connor asked to take a vote to see if the women would mind if Karen (Wendell) could use the women's bathroom. Most of the women there would not say anything. Two pipe fitter women said they knew Wendell to be a nice person and that they would not care if he came into their bathroom. A woman insulator said it would not

bother her if Wendell used the women's bathroom. There were at least 20 women, and their Stewart's at the meeting. I stated that I was sure Wendell was a nice person and that I did not have any problem with Wendell except that I did not want a man in the woman's bath / locker room where I have to change clothes. I suggested that there was another bathroom. One that was not a locker room, that Wendell could use by himself. Mr. O'Connor said that Wendell would rather use the women's bathroom. One of the pipe fitter women suggested that she or someone could watch the door while I was dressing up and dressing down. I said I would not feel comfortable with that because I would never know if Wendell would be in the bathroom or not. I also told them that men were saying they were being discriminated against because they are not allowed to use the women's bathroom. Maybe they should go into the women's locker room like Wendell and get a free look. Mr. O'Connor was very upset with me. He asked me to have a private conversation after the meeting, which would happen the next day as the work shift was over.

2/28/06 Tue. AM between 8:15 and 8:30 my Stewart and I went to see Pat O'Connor and Dean Sac. Mr. O'Connor said that he spoke to Wendell and that he was willing to compromise and use a different bath / locker room then me. That the issue should be closed. (He changed from calling him Karen to calling him Wendell).

I said that I felt confident that Wendell was a transsexual not a hermaphrodite. I said that I thought they thought that this was all a big joke. That I had been lied to numerous times and that perhaps I should talk to Susan Landahl the Site Vice President for Exelon at LaSalle Station. Pat was very upset. Pointed his finger at me raised his voice and told me that if I did not let the issue go that I would no longer have a job with Venture. He does not know why I am so upset or why I would not let this go away. I said I felt I had been violated. I would appreciate it if you did not threaten me again. He went to say something else still having his finger in my face….I told my Stewart to get my business agent on the phone. I asked Dean Sac and Pat O'Connor to please leave the room so that I could speak to my business agent on the phone in private. My Stewart dialed the phone and got David Raikes my business agent. I told David that I my job had been threatened over the Wendell/ Karen issue. I was very upset, and was crying. David reassured me that I was a union member and that he would take care of the issue that they could not fire me. I told David that I wanted to file a grievance against Venture because of the situation. David told me I could not file a grievance. Just let him take care of it. When I was going back to my work place, I saw Dean Sac in the hallway. He asked if I was sure. If I did not have an issue with him. I said no. I went back to work. Lot's of people asking many questions. I told them I did not want to talk about it. I ran into a pipe fitter Steve Wagner. He told me he was out of the same Union Local 501 as Wendell and grew up with him. He told me Wendell was a male. That he was married to a woman and that they had adopted two children. They were now divorced. About 1 PM, I went to the Aux build where there is a bathroom inside the plant and I threw up.

1:20 I went to the nurse's office to get something for my stomach. I went back to work. People all asking me questions. I was so upset I left work two hours early.

03/1/06 David called me in the morning at work. He said he had taken care of the situation. I asked him again if I could file a grievance. He told me no. I asked him why not. I have been violated, lied to, humiliated, and threatened. I broke down and started

crying. Everyone in the office was looking at me. I worked 10 hours that day sick to my stomach.

03/02/2006 I had a hard day at work. People were teasing me. They were asking me questions.

0303/2006 I caught Mike Less (Labor Superintendent) spying on me twice. He was watching to see if I was working or not to try and fire me.

03/05/2006 I was told by Dan Malloy and Bob H supervisors for the CSCS pump room to come in at 6:20 instead of 8:20. That the nighttime people would be coming in an hour earlier. I asked my GF and was told to do what they told me to do. That is the job you are on.

03/06/2006 I arrived at work at 6:20 AM, Mike Less asks me what am I doing here. I told him I was told to come in an hour early by Dan Malloy and Bob H. That we were going to do hands on 24-hour coverage. Mike told me I am not to do what they tell me to do that he is in charge of me and that I am to do as he tells me to do. Later, I spoke with my GF Tim Swartz and told him I was having trouble keeping up with the mess on my job. I was worried one of the pipe fitters would get hurt. He said he would talk to Mike Less. Ha came back 45 minutes later and said he could not spare anyone to help me. I saw Mike Less spying on me again and I asked him for help. I told him there was to be two laborers on the job I was working on. In the past on this position and during the night shift, they have two laborers doing the job I am doing. Prior to my speaking to Mike a pipe broke in the CSCS pump room and there was 3 - 4 inches of water in the large room, with 15 pipe fitters working on all kinds of pipe and equipment. This is a very unsafe environment. There was too much going on and I needed help. I was worried one of the men would be injured. Mike Less yelled at me that he did not have any one else who could work with me. I would have to do it myself and he screamed at me if I did not like it I could go home. I tried to mop up the 3-4 inches of water and stay ahead of the situation. There were too many people in the area and I became frustrated and was very upset at being yelled at for trying to make sure the job was done correctly. I went home early and was throwing up on the way home.

03/07/2006 Mike Less giving me a hard time again. He said something about me saying something. I did not know what he was talking about. He said he had witnesses.

03/08/2006 I was able to keep three of the four rooms clean on this day. Three of the rooms are on different floors spread out all over the place. Tim Swartz came and got me and said that Mike Less complained to him that the room on the bottom floor was not cleaned and was an unsafe area. I stopped the work I was doing. I went down there right away so that I could clean up. I was cleaning up the area and Mike Less started screaming at me. What was I doing! Why was this room a mess! The NRC wrote the area up for being un-kept! I told him that I made him aware that I was having trouble keeping up and I got so upset that I started to cry again. Two Pipe fitters by the name of Bill Byebee and Derek _____ defended me to Mike Less. They told him that I was always working and that was why they requested me to support them on this job. Mike told them to stay out of it that it was none of their business. Bill Byebee told Mike Less I am a pipe fitter. You have no jurisdiction over me. I am her witness. You are being out of line with her. Mike Less then threatened me with Dean Sac. I said fine. I would like to speak with dean Sac too. So I left and found Dean Sac in the track way. I had a

meeting with Mike Less, Dean Sac and Ron Ross ( Project Superintendent on Days). At this time, Mike Less started to pretend to be concerned with my well-being. He stated to Ron Ross that he felt I was stressed out.  I should take some time off.  I said I was a single parent that they all know it and I could not afford to do that.  It was then stated that we should all try to get along.

03/09/2006 7AM, People teasing me about Wendell.  Saying things and making snide remarks how they would like to see me naked too.  Comments like are your breasts fake like Wendell's or are they real.  I went to the service building to talk to Susan Landahl about the situation.  She was on her way to a meeting and asked me to come back at 5:30 or 5:45.  I responded that I would.  She seemed very concerned she could see I was upset.

03/09/2006 5:45 PM Went to talk to Susan Landahl (Site Vice President for Exelon), I told her about the situation and what had happened.  She told me she had heard about Wendell.  She further indicated that she was not aware that he had caught me in the locker room with out any clothes on.  I told her I wanted to speak to her because Dean Sac and Pat O'Connor had threatened my employment and that I believed Wendell was a transsexual rather then a hermaphrodite.  I told her the same things I had said to Pat O'Connor and Dean Sac.  She said she would speak to both of them about the situation on Friday with me.  Near the end of our conversation, she brought Dan Enrighd (Plant Manager) into the conversation.

Friday 03/10/2006 I called off work as my father had emergency heart surgery. Susan Landahl had had a conversation with Pat O'Connor and Dean Sac.  I was not present because of the situation with my Father.

03/11/2006 7:20 AM, When I went into work, I was told by my general Forman Tim Swartz and my Stewart Brian Eitutis that I had been fired for insubordination.  I was very upset.  I started crying.  Tim told me that it would be OK that David Raikes would have it changed to a lay off.  I received two hours show up time.  The job I was on was not over with yet.  I was the only labor personnel on that position which I had been requested for as I had done the job the previous outage and had done a great job per my pipe fitter supervisor Bob H. and Dan Malloy.  I was replaced by another person to finish out the work.

After I left the job site, I went to my Union Local 393 labor hall to speak with David Raikes.  I told him I was very upset about being fired for insubordination.  I am a single mother and have two children to support. This has cost me a lot of money and grief. David reassured me that I had been laid off and not fired.  He told me to try to forget about the whole thing.  I told him either way I am still not working.  David asked me if I was going to sue the plant.  I told him I just want to work to support my children.  He told me that there is no law against a man being in a woman's bathroom.  He told me that I would not have a case.  He said that a man would have to be warned first not to be in a woman's bathroom.  I asked him if that meant that, all 800 men on the job site would be able to go in the women's bathroom and look at me changing.  Besides that, the sign on the door says ladies only.  That is a warning.  I again said I wanted to file a grievance.

He told me if I file a grievance, I would never work out there again. I said fine. I do not feel well and I have to go home. Would you please put my name on the out of work list?

On or about March 15th or 16th I phoned Susan Landahl (Exelon LaSalle Station site Vice President). I told her that Venture had fired me for insubordination. I asked her if she knew anything about the matter. She told me she knew nothing about it. She stated that she was not happy to hear about it. I thanked her for her help. She seemed genuinely concerned.

Also during this period, I spoke with Dan Barnett who is the Employer's Concern for Exelon nuclear station. I also spoke with someone from the EEOC. They referred me to another organization. They did not seem to be of any help. I do not think they believed what I was telling them.

03/30/2006 I found out David did not put my name on the out of work list.

04/11/2006 Tue. I got a call from local 393 to go to Braidwood nuclear Station to work for Venture. I was to go to Essex Road on the 14th.

Thurs. 04/13/2006 I got a call from Local union 393 and was told that Venture would not process me. I went to the hall to speak with my BA David Raikes. He said Venture has heard a rumor that I was going to sue them. David stated that if that was true that I would be sorry. He told me they were the only game in town and that my family would starve. He told me I would be crazy to try to sue them Venture has more money then god. They can get the best lawyers in the country and I cannot afford to get anyone except a local yokel. I told him I had no plan to sue because I do have to support my family. He then called Pat O'Connor and Pat stated that if I put it in writing that I would not sue them, then they would process me. David was instructed to tell me that Wendell Karen Drummond would be out there and they did not want any problems with me. I did not think I would run into Wendell because I would only be working 10-hour shifts on days, as Braidwood is outside my local 393 jurisdiction. It is in Local 75 jurisdiction. I knew I would not have to suit up and change clothes at this plant. I agreed and said I would go along with the program. ( I told my business agent David raikes that I would not sign anything. I also told him that if he forced me to sign something for Pat O'Connor I would turn him into the International Laborer's of America.)

Fri 04/14/2006 I went to in processing. Got there by 7:00 AM, I did all my classes and was done with everything. I passed everything. My name was announced over the intercom that the head of Security Rosario Kahn wanted to see me. I went to her office. She wanted to see my divorce papers. I had given the papers to her three years ago. I reminded her that I had given them to her and asked why did she need them again. She told me she did not ever remember seeing the paperwork on my divorce. I told her that she did have them. Look in your computer. They should be there. You have been harassing me for 4 year now. Every time I come for in processing, I have to call Robert Speek (Corporate Employee Concerns Investigator) about you. He clears everything up. She told me she needed the papers. I asked if I could leave to go get them and she said no. You will have to come back on Monday morning. I told her she was just trying to

keep me from going to work. I left her office and called a friend who I have given a key to my home in case of emergencies. She went to my home and found the papers. I had her fax them to Rosario and Robert Speek. In the past when I have faxed information, Rosario always claimed she did not get the information. This way there is no issue. My friend faxed the papers about 2 PM. About 3 PM, Rosario called me and said I was cleared to enter the plant. I went to get my badge. I was told by the security person that I was the last person processed. That because I was so late I would have to go on the back / night shift. I was very upset with this because I knew Wendell would be working on this shift. In the past, single parents usually get a choice what shift they want. I had worked days for years. Mike Less is in charge of what shift a person is put on.
04/17/2006
I went to work on the night shift. I saw Wendell in the lunchroom. This time his badge said Karen Drummond. When Wendell / Karen saw me, he smiled at me and winked. He made sure he sat across from me in the lunchroom and kept trying to talk to me. It was very upsetting to me because he kept staring at me and I knew he saw me naked. I was tortured by Mike Less, and Wendell aka Karen Drummond. I got very tired of the comments and remarks made by my coworkers about the situation. I was throwing up coming and going to work and was an emotional mess. I was the first person to be laid off that did not volunteer for it. I worked only 6 days. Most travelers, like me got two or more weeks of work after I was laid off.

04/24/2006 I changed union halls. I transferred from Labor Local 393 in Marseilles to Labor Local 75 Joliet.


This is my notes of events that took place. Currently, I am being treated for depression. I believe this has been brought on by these events. I look forward to speaking with you in more detail in the near future.

# EXHIBIT C

EEOC Form 161-B (3/98)                    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To:  **Tami Tarochione**                                    From:  **Chicago District Office**
    **313  Railroad Avenue**                                          **500 West Madison St**
    **Ottawa, IL 61350**                                              **Suite 2800**
                                     **Chicago, IL 60661**

    **CERTIFIED MAIL  7099 3400 0014 4053 7989**

[ ]  *On behalf of person(s) aggrieved whose identity is*
    *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
|  | **Donald  Marvin,** |  |
| **440-2007-02644** | **Investigator** | **(312) 353-8198** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII or the ADA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will
    be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

[ ]  The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN
    90 DAYS</u> **of your receipt of this Notice.**  Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge,
    you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred** <u>more than 2 years (3 years)</u> **before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____            2-29-08
                       **John P. Rowe,**                          *(Date Mailed)*
                       **District Director**

Enclosures(s)

cc:    **EXELON NUCLEAR LASALLE STATION**

EEOC Form 161-B (3/98)                    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Tami Tarochione**<br>313  Railroad Avenue<br>Ottawa, IL 61350 | From:  **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2800**<br>**Chicago, IL 60661** |

    **CERTIFIED MAIL  7099 3400 0014 4053 7996**

☐    *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | **Donald  Marvin,** | |
| 440-2007-02877 | **Investigator** | **(312) 353-8198** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII or the ADA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

☒    More than 180 days have passed since the filing of this charge.

☐    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒    The EEOC is terminating its processing of this charge.

☐    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

☐    The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice.  Otherwise, your right to sue based on the above-numbered charge will be lost.

☐    The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*         2-29-08

Enclosures(s)                                   **John P. Rowe,**        *(Date Mailed)*
                                         **District Director**

cc:    **NEWBERG PERINI STONE & WEBSTER (VENTURE)**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TAMI TAROCHIONE, | ) | PLAINTIFF DEMANDS TRIAL |
| Plaintiff, | ) | BY JURY |
| | ) | |
| v. | ) | Case No.  08 C 3147 |
| | ) | |
| EXELON CORPORATON, a Pennsylvania | ) | Judge:  JUDGE KENNELLY |
| corporation, individually and d/b/a | ) | |
| COMMONWEALTH EDISON CO., an Illinois | ) | Magistrate Judge:  JUDGE DENLOW |
| corporation, EXELON GENERATION LLC, a | ) | |
| Pennsylvania limited liability company, THE | ) | |
| SHAW GROUP, INC., a Louisiana corporation, | ) | |
| d/b/a STONE & WEBSTER, INC., a Louisiana | ) | |
| corporation, PERINI CORPORATION, a | ) | |
| Massachusetts corporation, d/b/a NEWBERG- | ) | |
| PERINI, INC., an Illinois Corporation, | ) | |
| NEWBERG/PERINI- STONE & WEBSTER, an | ) | |
| Illinois joint venture, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**PROOF OF SERVICE**

I, Philip W. Collins III, attorney for Plaintiff, hereby certify that, pursuant to LR5.9 and Fed. R. Civ. P. 5(b)(3), I caused to be served Plaintiff's First Amended Complaint at Law via Electronic Case Filing and United States mail with postage prepaid this 26th day of August, 2008, to the parties listed below.

s/Philip W. Collins III

Tamra Domeyer
Kent Sezer
Exelon Business Services Co.
10 S. Dearborn St., 48th Flr.
Chicago, IL 60603

Michael J. Murray
Edmund P. Boland
F. Kevin Murnighan
Carey, Filter, White & Boland
33 W. Jackson Blvd., 5th Flr.
Chicago, IL 60604